United States District Court
Southern District of Texas
FILED

MAY 0 5 2026

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| **JOSE JUAN GARZA-CABRERA,** | § | |
| | § | |
| **Movant,** | § | |
| | § | |
| **VS.** | § | **CIVIL NO. 7:26-CV-0003** |
| | § | **CRIM. NO. 7:24-CR-1886-1** |
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Respondent.** | § | |

## REPORT AND RECOMMENDATION

Movant JOSE JUAN GARZA-CABRERA has filed a *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody* (the "Section 2255 Motion") (Civ. Dkt. No. 1; Cr. Dkt. No. 36).[1]

Movant was sentenced to a term of imprisonment of 24 months upon his plea of guilty to one count of being found in the United States after having previously been deported. Seeking collateral review of his conviction, Movant raises Sixth Amendment claims of the ineffective assistance of counsel. Through sentencing, Movant was represented by Attorney Michelle Taylor with the Office of the Federal Public Defender. Movant complains that Ms. Taylor failed to file a motion to suppress the fact of his prior deportation, failed to move to dismiss the criminal charge based on Movant's legal status to be in the United States, and advised Movant to plead guilty despite his available defense.

Upon screening the Section 2255 Motion in accordance with Rule 4 of the Rules Governing Section 2255 Proceedings for the United States District Court (the "Section 2255 Rules"), the

---

[1] Unless otherwise noted, citations to specific pages in the record refer to the pagination of docket entries in the case management/electronic case-file (CM/ECF) system. As used here, "Civ. Dkt." is a citation to Civil Action No. 7:26-CV-0003, and "Cr. Dkt." is a citation to Criminal Action No. 7:24-CR-1886-1.

1 / 15

Magistrate Judge ordered the Government to respond.   The Government has since filed a responsive brief (Civ. Dkt. No. 6), arguing that Movant's claims are without merit or otherwise subject to dismissal as impermissibly conclusory.  Movant has not filed a reply.

This case was referred to the Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1).  Upon reviewing the record and the relevant law, the Magistrate Judge RECOMMENDS that the Section 2255 Motion (Civ. Dkt. No. 1; Cr. Dkt. No. 36) be DENIED and that this civil action be DISMISSED.  The Magistrate Judge also RECOMMENDS that a Certificate of Appealability ("COA") be DENIED.

## I. BACKGROUND

By way of background, Movant is a citizen and national of Mexico and non-citizen of the United States without lawful status to be in the country.  (Cr. Dkt. No. 24 at 1-4, 8-9; Cr. Dkt. No. 42 at 41-43).  On February 27, 2013, Movant was removed from the United States to Mexico through Del Rio, Texas.  (Cr. Dkt. No. 24 at 4, 8; Cr. Dkt. No. 42 at 42).  Following his removal, and while Movant was presumably in Mexico, he obtained the services of an immigration attorney, who filed an application for asylum in the United States on Movant's behalf.  (*See* Cr. Dkt. No. 42 at 46-47).  However, on January 1, 2015, while his asylum application was still pending, Movant re-entered the United States by rafting across the Rio Grande River near Rio Grande City, Texas. (*See* Cr. Dkt. No. 24 at 3; *see also* Cr. Dkt. No. 42 at 47).  There is no indication from the record that Movant's asylum application has ever been granted or that Movant has ever been granted some other form of permission to enter or remain in the United States since his removal in 2013.

That said, on October 31, 2024, Movant was encountered by federal immigration officials outside his apartment building in Edinburg, Texas.  (*See* Cr. Dkt. No. 24 at 3; *see also* Cr. Dkt. No. 42 at 41-42; Civ. Dkt. No. 1 at 4).  Movant supposedly told the officials that he had an

"immigration permit" and showed them "the immigration documents . . . in [his] possession[.]" (Civ. Dkt. No. 1 at 4). Movant was nonetheless arrested. (*Id.*). Notably, investigative reports would reflect that, when questioned by immigration officials, Movant admitted to illegally re-entering the United States. (*See* Cr. Dkt. No. 24 at 3).

In November 2024, Movant was formally indicted on one count of being an alien who had previously been deported but was then found in the United States in violation of Title 8, United States Code, Sections 1326(a), (b). (Cr. Dkt. No. 8).

Upon Movant's indictment, the undersigned Magistrate Judge issued a scheduling order, which included dates for a final pre-trial conference and jury trial. (*See* Cr. Dkt. No. 11). Ms. Taylor later moved to continue those settings. (Cr. Dkt. No. 14). In support, Ms. Taylor noted that she had requested, but was still pending receipt, of Movant's "A-file" (or Alien Registration File), and thus that more time was needed to investigate possible defenses to the criminal charge. (*Id.* at 1). Her request for continuance was granted. (Cr. Dkt. No. 15).

Nevertheless, in January 2025, Movant pleaded guilty to the indictment pursuant to a plea agreement at a re-arraignment held before the undersigned Magistrate Judge. (Cr. Dkt. Nos. 18, 20, 21, 42). According to the terms of the agreement, Movant agreed to plead guilty and waive his general right to appeal his conviction or sentence in exchange for the Government's agreement to recommend full credit at sentencing for Movant's acceptance of responsibility under the United States Sentencing Guidelines (the "Guidelines").[2] (Cr. Dkt. No. 18 at 1, 3-4). At the re-arraignment, Movant admitted that the following factual basis offered by the Government in support of his guilty plea was true and correct:

---

[2] Despite his general waiver, Movant did explicitly retain the right to an appeal or collateral review based on claims raising the ineffective assistance of counsel. (*See* Cr. Dkt. No. 18 at 3).

On or about [October 31, 2024], [Movant] was an alien, that is a citizen and national of Mexico, and a non-citizen of the United States, who was knowingly and unlawfully present in the United States, having been found near Edinburg, Texas.

After his removal from the United States on [February 27, 2013], through Del Rio, Texas, he reentered without obtaining the consent to reapply for admission from either the United States Attorney General or the Secretary of Homeland Security.

(Cr. Dkt. No. 42 at 41-42). Notably, once Movant had entered his guilty plea, the Magistrate Judge asked Ms. Taylor whether she had anything to add on Movant's behalf, and Ms. Taylor raised the issue of Movant's request for asylum:

> The Court:   Ms. Taylor, [anything else] for your two clients?
>
> Ms. Taylor:   No, Your Honor. Well, one brief thing, I guess. [Movant] did briefly bring up maybe an immigration claim he—I think he did want to proceed forward and plead guilty, of course, even though that he mentioned that during the court proceeding.
>
> The Court:   Okay.
>
> Ms. Taylor:   That's all I had.
>
> The Court:   But when you say that he brought up an Immigration claim, I guess he filed the paperwork, but it wasn't accepted.
>
>    Is that a good characterization?
>
> Ms. Taylor:   No, Your Honor, I believe he had an Immigration attorney, and he was trying to pursue some type of asylum application, but we have discussed that issue, Your Honor, my client and I, and he does wish to proceed forward today with a plea of guilty.
>
> The Court:   All right. Is it fair to say on the record that if that application was filed, it was not—he was not granted asylum or permission to be in the country?
>
> Ms. Taylor:   Well, Your Honor, it's my understanding that the application may have still been pending when [Movant] entered the United States.
>
> The Court:   Is that correct, [Movant]?
>
> [Movant]:   Yes, Your Honor.

The Court:    Okay.  Anything else for the Record, Ms. Taylor?

Ms. Taylor:    No, Your Honor.

(*Id.* at 46-47).

As the case proceeded to sentencing, the Probation Office prepared a Presentence Report ("PSR") using the 2024 version of the Guidelines.  (Cr. Dkt. No. 24 at 4).  The PSR recommended a base offense level of 8 under § 2L1.2(a), which applies to offenses related to unlawfully entering the United States.  (*Id.* at 4).  Also recommended were two upward adjustments of 6 levels and 10 levels, pursuant respectively to § 2L1.2(b)(2)(C) and § 2L1.2(b)(3)(A), based on the lengths of the sentences associated with felony drug convictions incurred by Movant in 2006 and 2019.  (*Id.* at 5).  Assuming a three-level downward adjustment for full acceptance of responsibility under § 3E1.1, the PSR calculated a total offense level of 21.  (*See id.* at 5-6, 11).  Based on his prior drug convictions, Movant was placed in a criminal history category of III.  (*Id.* at 6-8).  The PSR noted that the maximum statutory prison term was 20 years, and that under the Guidelines, Movant's offense level and criminal history category yielded an advisory imprisonment range of 46 to 57 months.  (*Id.* at 11).

Ms. Taylor filed objections to the PSR and sentencing-related requests on Defendant's behalf.  (Cr. Dkt. No. 23).  Among these, Ms. Taylor requested a downward departure from the Guidelines sentencing range based on an overrepresented criminal history.  (*Id.* at 3).  In support, Ms. Taylor offered that Movant's drug conviction from 2006 was dated and netted a relatively light sentence of 12 months of imprisonment.  (*Id.*).  Ms. Taylor also emphasized Movant's acceptance of responsibility, while arguing for a downward departure based on Movant's waiver of his appellate rights under the plea agreement.  (*See id.* at 2-3).

In April 2025, Movant was sentenced by the Honorable Drew B. Tipton, United States District Judge. (Cr. Dkt. No. 30 at 1; Cr. Dkt. No. 43). Judge Tipton effectively granted Ms. Taylor's sentencing-related requests, varying downward from the Guidelines range to impose a prison sentence of 24 months considering the remoteness of Movant's criminal history and his appellate waiver. (*See* Cr. Dkt. No. 43 at 10-11).

A final judgment was entered on May 2, 2025. (Cr. Dkt. No. 30). Consistent with his appellate waiver, Movant did not perfect an appeal. His release from the Bureau of Prisons is scheduled for July 14, 2026.[3]

Movant filed the Section 2255 Motion on December 30, 2025.[4] (Civ. Dkt. No. 1).

Upon the Magistrate Judge's order (Civ. Dkt. Nos. 2, 5), the Government filed its response to the Section 2255 Motion (Civ. Dkt. No. 6), generally arguing that Movant's claims are meritless or otherwise conclusory. The Government served its response on Movant (*see id.* at 35), and the Magistrate Judge advised Movant of the timeframe for filing a reply (Civ. Dkt. No. 9). No reply has been filed.

## II. CLAIMS

The Magistrate Judge understands Movant to raise three Sixth Amendment claims of ineffective assistance of counsel.[5] (Civ. Dkt. No. 1 at 4-5, 7).

---

[3] Movant's custodial information can be determined by querying his BOP Register Number, 59769-179, through the BOP's *Find an Inmate* website, available at https://www.bop.gov/inmateloc/ (last visited April 16, 2026).

[4] This is the date on which Movant claims to have placed the Section 2255 Motion in the prison mail system. (Civ. Dkt. No. 1 at 12). Filings by pro se prisoners are governed by the mailbox rule, such that they are deemed filed when deposited for mailing. *Medley v. Thaler*, 660 F.3d 833, 835 (5th Cir. 2011) (per curiam).

[5] Because he is proceeding pro se, Movant's pleadings are to be liberally construed. *See Coleman v. United States*, 912 F.3d 824, 828 (5th Cir. 2019).

First, Movant complains of Ms. Taylor's failure to file a motion to suppress pursuant to 8 U.S.C. § 1326(d). (*Id.* at 4). For reference, subsection (d) governs the requirements for a non-citizen defendant to challenge a prior removal order for purposes of defending against a § 1326 prosecution. In support of this claim, Movant alleges that he advised Ms. Taylor of his immigration attorney's efforts to obtain immigration-related relief, which presumably included the filing of an *Application for Asylum and for Withholding of Removal*, an *Application for Protection Under the Convention Against Torture*, and an *Application for Cancellation of Removal and Adjustment of Status for Certain Nonpermanent Residents*. (*See id.*).

Second, Movant complains of Ms. Taylor's failure to move to dismiss the criminal charge based on his legal status to be in the United States. (*Id.* at 5). Movant would note, again, that he advised Ms. Taylor of his pending applications for immigration-related relief. (*Id.* at 4-5).

Third, Movant complains that Ms. Taylor advised him to plead guilty despite his available defense to the charge based on his legal status to be in the United States. (*Id.* at 7).

### III. LEGAL STANDARDS

**A. Collateral Review Under § 2255**

Section 2255 provides a federal prisoner with a post-conviction remedy to test the legality of their detention by filing a motion to vacate their judgment and sentence before the trial court. *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004).

Relief under § 2255 "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam) (citing *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981)). There are four grounds for which a federal prisoner may seek § 2255 relief: (i) the sentence was imposed in

violation of the Constitution or federal law; (ii) the court lacked jurisdiction to impose the sentence; (iii) the sentence exceeds the statutory maximum; or (iv) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). The movant has the burden to establish their right to relief by a preponderance of the evidence. *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980).

Claims that are generally not cognizable under § 2255 include: a simple violation of the rules of evidence, unless that violation affects the fundamental fairness of the proceedings so as to implicate due process, *United States v. Lightfoot*, 2021 WL 5575879, at *6 (W.D. La. Nov. 29, 2021);[6] a Fourth Amendment challenge to a search insofar as the state provided a "full and fair" opportunity to litigate the matter, *United States v. Ishmael*, 343 F.3d 741, 742 (5th Cir. 2003) (citing *Stone v. Powell*, 428 U.S. 465 (1976)), *cert. denied*, 540 U.S. 1204 (2004), or a similar challenge to an arrest warrant, *United States v. DeCarlo*, 2007 WL 1345320, at *6 (W.D. Tenn. May 7, 2007); the denial of a motion for a continuance, unless that denial affects the fundamental fairness of the proceedings so as to implicate due process, *Sikes v. Davis*, 2018 WL 741632, at *3-4 (N.D. Tex. Feb. 6, 2018) (citing *Jackson v. Johnson*, 194 F.3d 641, 656 (5th Cir. 1999));[7] a challenge as to the sufficiency of the trial evidence, *Forrester v. United States*, 456 F.2d 905, 907 (5th Cir. 1972) (per curiam); and a technical application of the Guidelines, *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999).

A § 2255 motion may be denied without a hearing if the record conclusively shows the movant is not entitled to relief. *United States v. Drummond*, 910 F.2d 284, 285 (5th Cir. 1990). Conclusory or speculative allegations do not require a hearing. *See United States v. Edwards*, 442

---

[6] *See also Glouser v. United States*, 296 F.2d 853, 856 (8th Cir. 1961).

[7] *See also Houser v. United States*, 508 F.2d 509, 518 (8th Cir. 1974).

F.3d 258, 264 & 268 n.10 (5th Cir. 2006). Nor will such allegations give rise to a constitutional issue and thus a right to collateral relief. *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989) (per curiam) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (per curiam)).

## B. Ineffective Assistance of Counsel

A Sixth Amendment claim of ineffective assistance of counsel is analyzed according to the Supreme Court's two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687. Thus, under *Strickland*, the movant must show that counsel's performance was both (i) deficient and (ii) prejudicial.

Counsel's performance is deficient where it falls below an objective standard of reasonableness. *United States v. Juarez*, 672 F.3d 381, 385 (5th Cir. 2012). In reviewing this *Strickland* factor, "every effort [is] made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. A reviewing court must be "highly deferential" and "apply a strong presumption that counsel's performance was reasonable or 'might be considered sound trial strategy.'" *Juarez*, 672 F.3d at 386 (quoting *Strickland*, 466 U.S. at 689). Counsel's unsuccessful efforts, so long as they are reasonable, do not amount to deficient performance. *Youngblood v. Maggio*, 696 F.2d 407, 410 (5th Cir. 1983) (per curiam).

To demonstrate prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine

confidence in the outcome. *Id.* This showing is specific to the stage of the proceedings in which the deficient performance is alleged to have occurred.

Where counsel did not file a motion to suppress, the movant must show there was a meritorious basis for suppression and a reasonable probability that the outcome of the proceedings would have been different absent the excludable evidence. *See Kimmelman v. Morrison,* 477 U.S. 365, 375 (1986). Insofar as a movant complains of counsel's failure to file a motion to dismiss the criminal charge, the movant must show a reasonable probability that the motion would have been successful. *DeRoo v. United States,* 223 F.3d 919, 925-26 (8th Cir. 2000). In the guilty plea context, a movant must show that they would not have pleaded guilty on counsel's advice but would instead have insisted on a trial. *Armstead v. Scott,* 37 F.3d 202, 206 (5th Cir. 1994) (citing *Hill v. Lockhart,* 474 U.S. 52, 60 (1985)).

The burden to establish ineffective assistance is on the movant, who must do so by a preponderance of the evidence. *Jernigan v. Collins,* 980 F.2d 292, 296 (5th Cir. 1992). Counsel is not deficient for failing to make meritless or frivolous arguments. *United States v. Kimler,* 167 F.3d 889, 893 (5th Cir. 1999). Also, mere conclusory or speculative allegations of ineffective assistance do not raise a constitutional issue. *Kinnamon v. Scott,* 40 F.3d 731, 735 (5th Cir. 1994) (per curiam); *Miller v. Johnson,* 200 F.3d 274, 282 (5th Cir. 2000).

If the movant fails to prove one *Strickland* prong, the remaining prong need not be considered; nor must the prongs be analyzed in any particular order. *Strickland,* 466 U.S. at 697.

## C. Section 1326 Offense

A conviction under § 1326 requires proof of four elements: (1) alienage; (2) arrest and deportation; (3) re-entry to or being found in the United States; and (4) lack of the Attorney General's consent to re-enter. *See United States v. Hernandez-Adame,* 157 F.4th 662, 670 (5th

Cir. 2025).   Section 1326 articulates a "general intent" crime, which merely requires that a defendant re-enter the country voluntarily but does not otherwise require an intent to act unlawfully.  *United States v. Lucio-Garza*, 762 F. App'x 190, 191 (5th Cir. 2019) (per curiam). As noted, however, subsection (d) of the statute does contemplate that a defendant may challenge the validity of their prior deportation order for purposes of the deportation element of the offense. A successful challenge requires three showings by the defendant, specifically, that: (1) the defendant exhausted any administrative remedies available in seeking relief against the deportation order; (2) "the deportation proceedings at which the order was issued improperly deprived the [defendant] of the opportunity for judicial review;" and (3) the entry of the deportation order was "fundamentally unfair." 8 U.S.C. § 1326(d).

## IV. ANALYSIS

Movant's first claim—that Ms. Taylor rendered ineffective assistance in failing to file a § 1326(d) motion—is impermissibly conclusory.  Movant does not contend that his pending requests for immigration-related relief—like his application for asylum—challenge the validity of his 2013 deportation.   Nor does Movant otherwise suggest any improprieties associated with the 2013 proceedings.  Because Movant offers nothing in support of the three § 1326(d) factors, the instant claim of ineffective assistance is conclusory and should be summarily dismissed.  *See Kinnamon*, 40 F.3d at 735; *see also Miller*, 200 F.3d at 282.

Movant's other ineffective assistance claims—which relate to Ms. Taylor's failure to file a motion to dismiss and her recommendation that he plead guilty—are meritless.  Both claims are based on the notion that dismissal of the § 1326 charge was warranted given Movant's pending applications for immigration-related relief.  Movant's position, perhaps, is that the applications either reflected his intent to re-enter and remain in the country lawfully or granted him some sort

of permission to re-enter and remain. Whatever the case, Movant's predicate—that dismissal of the charge was warranted—is utterly false. To be clear, none of the forms of relief supposedly sought by Movant have any bearing on his underlying § 1326 prosecution.

Again, among the benefits sought by Movant are those of asylum, the withholding of removal, and protection under the Convention Against Torture (or "CAT protection"). Generally, each of these offers certain protections—such as relief from removal or deportation—to aliens who are afraid of persecution in their home country. *See L.N. v. Garland*, 109 F.4th 389, 394 (5th Cir. 2024); *see also Eduard v. Ashcroft*, 379 F.3d 182, 195 (5th Cir. 2004). Movant also seeks cancellation of removal, which applies to certain classes of aliens with several years of continuous presence in the United States. *See* 8 U.S.C. § 1229b(a), (b). The mechanism available generally depends on one's particular immigration history. For example, an alien who has previously been deported is barred from applying for asylum but may still be eligible for withholding of removal. *See Ramirez-Mejia v. Lynch*, 794 F.3d 485, 489-90 (5th Cir. 2015); *see also Herrera-Molina v. Holder*, 597 F.3d 128, 138-39 (2d Cir. 2010).

That said, the Fifth Circuit has held that, because illegal re-entry is a general intent offense, an alien's lawful motive to seek asylum is irrelevant to a § 1326 prosecution. *See Lucio-Garza*, 762 F. App'x at 191 (affirming district court's decision barring evidence at illegal re-entry trial concerning defendant's stated desire to apply for asylum). The Fifth Circuit has further recognized, at least through dicta, that qualifying for asylum and the withholding of removal would not impact the criminal elements of prior removal and re-entry without authorization. *See United States v. Brizuela*, 605 F. App'x 464, 465 (5th Cir. 2015) (per curiam) (affirming denial of motion to dismiss illegal re-entry charge on ground that government did not refer defendant to asylum officer for reasonable-fear determination before instituting prosecution). Other courts hold that,

even though an unlawful alien may still apply for asylum or CAT protection, this does not mean that such applicants have been granted some sort of consent by the Attorney General to enter the United States. *United States v. Osorio*, 2022 WL 2195350, at *3 (D. Ariz. May 17, 2022) (recommending denial of motion to dismiss illegal re-entry charge on asserted ground that, as refugee, defendant was immune from prosecution), *report and recommendation adopted*, 2022 WL 2192215 (D. Ariz. June 17, 2022). Nor can these types of remedies be understood to offer retroactive immunity from prosecution. *See United States v. Chun Lin Zhang*, 358 F. Supp. 3d 157, 158-59 (D. Mass. 2019) (granting government's motion to preclude reference at illegal re-entry trial to defendant's *Application for Provisional Unlawful Presence Waiver* for lack of relevance because the waiver was "not the equivalent of receiving express consent from the Attorney General to reapply for admission nor would it convey upon defendant any sort of retroactive immunity for [the offense]").

Because a motion to dismiss based on Movant's pending immigration applications would have been meritless, Movant is unable to show that Ms. Taylor's failure to make such a motion amounted to *Strickland* error. Counsel is not required by the Sixth Amendment to make futile motions or objections. *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990). The meritless nature of Movant's defense also means he cannot depend on such defense to show either (i) that Ms. Taylor was deficient in recommending his guilty plea, or (ii) that his decision to plead guilty was somehow affected by Ms. Taylor's recommendation. *See Johnson v. United States*, 2023 WL 6442991, at *6 (S.D. Fla. Oct. 3, 2023) ("Counsel could not have reasonably argued that Movant merely 'possessed' the marijuana, that the gun had no connection to the drug trafficking offense, or that Movant's conduct was protected under the Second Amendment, so counsel's purported failure to mention these meritless defenses to Movant had no effect on Movant's voluntary and

13 / 15

knowing decision to plead guilty."); *see also United States v. Kelly*, 552 F.3d 824, 831 (D.C. Cir. 2009) (holding that counsel was not obligated to discuss a meritless defense when recommending to defendant that they plead guilty).

## V. CONCLUSION

### *Recommendation*

For these reasons, the Magistrate Judge RECOMMENDS that the Section 2255 Motion (Civ. Dkt. No. 1; Cr. Dkt. No. 36) be DENIED and that this civil action be DISMISSED.

### *Certificate of Appealability*

The Magistrate Judge must also address the matter of the issuance of a COA. A movant may not appeal the final order of a collateral proceeding "unless a circuit justice or judge issues a [COA]." 28 U.S.C. § 2253(c)(1). Rule 11 of the Section 2255 Rules instructs that the court "must issue or deny a [COA] when it enters a final order adverse to the applicant." A movant is entitled to a COA upon showing that a reasonable jurist would find it debatable "whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); 28 U.S.C. § 2253(c). Having concluded that Movant fails to meet this threshold, the Magistrate Judge RECOMMENDS that the District Judge deny a COA.

### *Objections*

Within fourteen (14) days after being served a copy of this report, a party may serve and file specific, written objections to the proposed recommendations. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Failure to file written objections within fourteen (14) days after service shall bar an aggrieved party from de novo review by the District Judge on an issue covered in this report

14 / 15

and from appellate review of factual findings accepted or adopted by the District Judge, except on grounds of clear error or manifest injustice.

### *Directive to Clerk of Court*

The Clerk of Court is DIRECTED to forward a copy of this report to Movant by certified mail, return receipt requested.

DONE at McAllen, Texas this 5th day of May 2026.

J. SCOTT HACKER
United States Magistrate Judge

15 / 15